UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DONNA WHITSETT,

                      Plaintiff,

      v.

NANCY A. BERRYHILL,[1] Commissioner of
  Social Security,

                      Defendant.
_____

**DECISION
and
ORDER

17-CV-00416F
(consent)**

APPEARANCES:          LAW OFFICES OF KENNETH R. HILLER, PLLC
                            KENNETH R. HILLER, and
                            STEPHEN R. RUOTSI, of Counsel
                            Attorneys for Plaintiff
                            6000 North Bailey Avenue
                            Suite 1A
                            Amherst, New York 14226

                            JAMES P. KENNEDY, JR.
                            UNITED STATES ATTORNEY
                            Attorney for Defendant
                            Federal Centre
                            138 Delaware Avenue
                            Buffalo, New York 14202
                                  and
                            JOHANNY SANTANA,
                            Special Assistant United States Attorneys, of Counsel
                            United States Attorney's Office
                            c/o Social Security Administration
                            Office of General Counsel
                            26 Federal Plaza – Room 3904
                            New York, New York 10278

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Fed.R.Civ.P. 25(d), Berryhill is substituted for Carolyn W. Colvin as Defendant in this case. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

**JURISDICTION**

On June 19, 2018, the parties to this action, consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned. (Dkt. 14). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on October 20, 2017 (Dkt. 8), and by Defendant on February 2, 2018 (Dkt. 12).

**BACKGROUND**

Plaintiff Donna Whitsett ("Plaintiff"), brings this action under the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on July 20, 2015, for Disability Insurance Benefits under Title II of the Act ("SSDI"), and for Supplemental Security Income under Title XVI of the Act ("SSI") (together, "disability benefits"). Plaintiff alleges she became disabled on July 1, 2015, based on osteoarthritis, sciatic nerve, and depression, and has not worked since May 2015. AR[2] at 189-99, 226-33. Plaintiff's application was denied on October 8, 2015, AR at 18, 83-84, 87-102, and at Plaintiff's timely request, on October 25, 2016, a hearing was held in Buffalo, New York, before administrative law judge Eric L. Glazer ("the ALJ"). AR at 34-62. Appearing and testifying at the hearing were Plaintiff, with legal counsel Kelly Laga-Shandra, Esq.

On November 7, 2016, the ALJ issued a decision denying Plaintiff's claim, AR at 15-33 ("the ALJ's decision"), which Plaintiff appealed to the Appeals Council, with Kelly Laga-Shandra, Esq., appointed to represent Plaintiff on his administrative appeal. AR

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on August 21, 2017 (Dkt. 7).

2

at 12.  On March 16, 2017, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision.  AR at 1-4.  On May 15, 2017, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision.

On October 20, 2017, Plaintiff filed a motion for judgment on the pleadings (Dkt. 8) ("Plaintiffs' Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 8-1) ("Plaintiff's Memorandum").  On February 2, 2018, Defendant filed a motion for judgment on the pleadings (Dkt. 12) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of Her Motion for Judgment on the Pleadings Pursuant to the Local Standing Order on Social Security Cases (Dkt. 12-1) ("Defendant's Memorandum").  In further support of Plaintiff's Motion, Plaintiff filed on February 23, 2018, Plaintiff's Response to the Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 13) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is GRANTED; Defendant's Motion is DENIED.

## **FACTS**[3]

Plaintiff Donna Whitsett ("Plaintiff" or "Whitsett"), born March 28, 1969, was 46 years old as of July 1, 2015, her alleged disability onset date ("DOD").  As of October 25, 2016, the date of the administrative hearing, Plaintiff was homeless and lived with various friends while awaiting entry into a homeless shelter.  AR at 38-39, 53.

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those facts necessary for determining the pending motions for judgment on the pleadings.

It is undisputed that Plaintiff suffers from the severe impairments of bilateral knee degenerative joint disease, and osteoarthritis of the right hip. In a functional limitation report completed on September 11, 2015, Fahad Jawaid, M.D. ("Dr. Jawaid"), Plaintiff's treating physician, reported Plaintiff was moderately limited in walking, standing, lifting, carrying, pushing, pulling, bending, and climbing stairs, but was not limited as to sitting, seeing, hearing, speaking, or using her hands. AR at 318. At a consultative examination on September 15, 2015, consultative examiner Hong-Biao Liu, M.D. ("Dr. Liu"), observed Plaintiff was in no acute distress, walked with a limp both with and without a cane, could not heel/toe walk, could not squat past 10%, and had a normal stance. AR at 290-93. Dr. Liu opined Plaintiff had moderate limitations for prolonged walking, bending and kneeling, and mild to moderate limitations for any activity requiring acute visual accuracy based on a left eye impairment. *Id.* at 293.

On November 12, 2015, Plaintiff, while crossing a street, was struck in her right side by an automobile and suffered a dislocated right shoulder and a fractured right tibial plateau for which Plaintiff, on November 13, 2015, underwent open reduction internal rotation ("ORIF") surgery, performed by Christopher A. Ritter, M.D. ("Dr. Ritter"), at Erie County Medical Center ("ECMC"). AR at 322-32. Following the surgery, Plaintiff remained hospitalized while participating in a comprehensive rehabilitation program in which Plaintiff, by her discharge on December 14, 2015, progressed from a wheelchair to a walker. AR at 304-15, 319, 322-30, 333-39, 341-82, 384-92. Plaintiff then attended physical therapy ("PT") until May 24, 2016, when Plaintiff was discharged for non-compliance after missing ten consecutively scheduled PT sessions. AR at 450. At follow-up visits to ECMC on April 4, May 2, and June 17, 2016, Plaintiff exhibited an

abnormal gait and to complain of tenderness in her right knee.  AR at 424-27, 433-36, and 493-94.  At the June 17, 2016 examination, Plaintiff ambulated with a cane and reported aggravated pain with ambulation.  AR at 433, 435.

## DISCUSSION

**1.      Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine

5

whether the SSA's findings are supported by substantial evidence.  *Id.*  "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

**2.     Disability Determination**

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement,[5] there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.
[5] The duration requirement mandates the impairment must last or be expected to last for at least a continuous twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff meets the Act's insured status requirement for SSDI through December 31, 2019, AR at 20, Plaintiff has not engaged in substantial gainful activity since July 1, 2015, her alleged disability onset date, *id.*, that Plaintiff suffers from the severe impairments of bilateral knee degenerative joint disease and osteoarthritis of the right hip, *id.* at 20-21, but that Plaintiff's other medically determinable impairments do not have more than a minimal impact on Plaintiff's ability to do work activities, *id.*, at 21, that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in

7

Appendix 1, *id.* at 23, and that Plaintiff retains the RFC to perform medium work, including the ability to lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk six hours in an eight-hour workday, sit for six hours in an eight-hour workday, and frequently stoop and kneel. AR at 23-27. Accordingly, the ALJ concluded Plaintiff is capable of performing her PRW as a home health aide, *id.* at 27-28, such that Plaintiff is not disabled as defined under the Act. *Id.* at 28. Plaintiff does not contest the ALJ's findings with regard to the first, second, and third steps of the five-step analysis, but argues that at step four, the ALJ improperly evaluated Plaintiff's RFC, specifically her ability to sit and/or stand for six hours in an eight-hour workday, as well as to kneel and stoop, and to occasionally lift and/or carry 50 pounds, such that Plaintiff is not capable of medium work, including her PRW as a home health aide, maintaining the ALJ improperly relied on medical evidence rendered stale by the injuries Plaintiff sustained on November 12, 2015, Plaintiff's Memorandum at 17-22, and, alternatively, the ALJ failed to properly incorporate medical opinions into his RFC finding. *Id.* at 22-26. In opposition, Defendant argues substantial evidence, including the medical opinions in the record, supports the ALJ's determination that Plaintiff is not disabled. Defendant's Memorandum at 8-15. In further support of her motion, Plaintiff reiterates that the ALJ improperly evaluated the medical opinion evidence, Plaintiff's Reply at 1-5, such that the conclusion that Plaintiff's RFC permits her to perform medium work is not supported by substantial evidence in the record. Plaintiff's Reply at 5-6. Because Plaintiff does not challenge the ALJ's findings at the first, second and third steps, the undersigned does not address them.

According to Plaintiff, in determining Plaintiff is not disabled, the ALJ relied on the medical opinions of consultative examiner Dr. Liu, AR 289-95, and treating physician Dr. Jawaid, both of which are stale because they were rendered before November 12, 2015, when Plaintiff was struck by a car and exacerbated her knee and hip impairments which were deteriorating even before the accident. Plaintiff's Memorandum at 17-22. In opposition, Defendant maintains that the record fails to establish that after recovering from the injuries sustained in the accident, Plaintiff's RFC was diminished below her RFC prior to the accident, such that Plaintiff's staleness argument is without merit. Defendant's Memorandum at 8-13. In further support of her motion, Plaintiff argues that notwithstanding the injuries sustained in the accident, the medical records establish Plaintiff's physical condition deteriorated after both Dr. Jawaid's opinion rendered September 11, 2015, and Dr. Liu's September 15, 2015 consultative examination, which thus were stale by the date of the ALJ's November 7, 2016 decision. Plaintiff's Reply at 2-3.

"A stale medical opinion does not constitute substantial evidence to support an ALJ's findings." *Clute ex rel. McGuire v. Commissioner of Social Security*, 2018 WL 6715361, at * 5 (W.D.N.Y. Dec. 21, 2018) (citing *Camille v. Colvin*, 104 F.Supp.3d 329, 343-44 (W.D.N.Y. 2015), *aff'd*, 652 Fed.Appx. 25 (2d Cir. 2016)). A medical opinion "may be stale if the claimant's condition deteriorates after the opinion is rendered and before the ALJ issues his decision." *Id.* (citing *Welsh v. Colvin*, 2016 WL 836081, at * 12 (W.D.N.Y. Mar. 4, 2016) (finding medical opinion rendered before "significant deterioration" of the claimant's mental status did not "constitute substantial evidence supporting the ALJ's determination"). In the instant case, not only does the record

9

establish that, in light of the injuries Plaintiff sustained in the November 12, 2015 motor vehicle accident, the medical opinions of Drs. Jawaida and Liu were stale when the ALJ's decision was rendered on November 7, 2016, but regardless of whether the opinions were stale, the ALJ's decision that Plaintiff retains the RFC for medium work, including her PRW as a home health aide, is not supported by substantial evidence in the record.

In particular, the ALJ's determination that Plaintiff is capable of walking and or standing six hours in an eight-hour workday, lifting and carrying 25 lbs. frequently and 50 lbs. occasionally, and frequently bending and stooping is inconsistent with the repeated medical findings that Plaintiff has bilateral knee degenerative joint disease and osteoarthritis of the right hip. Specifically, upon examination on September 11, 2015, Dr. Jawaid opined severe arthritis pain in her hip and knees rendered Plaintiff moderately limited in walking, standing, lifting, carrying, pushing, pulling, bending, and climbing including stairs. AR at 317-18. At a subsequent examination by Dr. Jawaid on October 28, 2015, Plaintiff presented with osteoarthritis of both knees and right hip and was advised she likely would need a total knee replacement of both knees in the future. AR at 411-12. Plaintiff used a knee brace on her left knee, and inspection and palpation were abnormal with clicking of both knees detected with passive range of motion ("ROM"), and hip adduction and abduction caused pain bilaterally. *Id.* at 413.

Noted upon examination by Dr. Liu on September 15, 2015, were Plaintiff's history of arthritis, and detached retina as a child secondary to child abuse, as well as the fact that Plaintiff walked with the assistance of a cane, both inside and outside, to assist with balance and limit pain. AR at 290-91. With glasses, Plaintiff's vision was

corrected to 20/25, and Plaintiff walked with a limp both with and without a cane, and back pain prevented Plaintiff from heel and toe walking, and limited her ability to squat to 10%. *Id.* Examination of Plaintiff's musculoskeletal showed limited lower lumbar spine ROM, positive straight leg raising ("SLR") test, full ROM of shoulders, hips, and ankles, and limited knee flexion and extension, but joints were stable and nontender and without redness, heat, swelling or effusion. *Id.* at 292. Dr. Liu opined "the cane is medically necessary to keep the balance and limit the pain," *id.* at 291, and found Plaintiff had a moderate limitation for prolonged walking, bending, and kneeling, and mild to moderate limitation for any activity requiring acute visual accuracy because of impaired vision in her left eye. *Id.* at 293. Significantly, both Drs. Jawaid and Liu found Plaintiff to be moderately limited in her ability to stand and walk, and although there is no evidence that any physician prescribed the cane Plaintiff used to assist with walking, and despite the fact that Plaintiff walks with a limp regardless of whether she uses a cane, Dr. Liu agreed Plaintiff's use of the cane was necessary for balance and pain. AR at 290. Furthermore, Plaintiff's bilateral knee arthritis is confirmed by the April 4, 2015 X-ray showing bilateral hypertrophic (degenerative) changes with narrowing of the medial and lateral compartments of the left knee, AR at 283, and Dr. Jawaid, on October 28, 2015, advised Plaintiff would need a knee replacement in the future. AR at 411.

The opinions of Dr. Jawaida and Dr. Liu thus are consistent with Plaintiff's description at the ALJ hearing of the difficulties posed by her impairments, including that the pain in her hip made it difficult to sit for an extended period of time, AR at 58-59, that Plaintiff needed to rest after only 15 minutes of activity, *id.* at 59, she is unable to bend

her leg to tie her shoes and used a "sock aid" from PT to put on her socks, *id.*, at 60, needed to sit while showering, *id.*, and her proclivity to fall, especially while descending stairs, made it very difficult to carry laundry to the basement. *Id.* at 60-61. Plaintiff testified that for pain relief she often used a knee brace or an Ace bandage, or would elevate her leg and use a heating pad. AR at 55-56. Plaintiff maintains her knee and hip pain got worse following the November 12, 2015 accident. AR at 55. Plaintiff shopped for groceries when accompanied by a friend who helped with the grocery cart and bagging the groceries. AR at 53-54.

The record thus simply does not support that even before the accident, Plaintiff retained the RFC for medium work, particularly walking/standing six hours in an eight-hour workday, and frequent bending and kneeling, including her PRW as a home health aide.[6] Nor does the record establish Plaintiff's impairments improved after her accident but, rather, strongly suggests Plaintiff was more impaired with regard to not only her knees and hip, but also her right shoulder, such that the opinions of Drs. Jawaid and Liu were no longer reflective of Plaintiff's ability to perform work-related functions.

In particular, despite Dr. Ritter's optimistic prognosis that Plaintiff would recover from the injuries sustained in the November 12, 2015 accident, Plaintiff's medical

---

[6] According to the Dictionary of Occupational Titles ("DOT"), the regular duties of a home health aide include caring
> For elderly, convalescent, or handicapped persons in patient's home, performing any combination of following tasks: Changes bed linens, washes and irons patient's laundry, and cleans patient's quarters. Purchases, prepares, and serves food for patient and other members of family, following special prescribed diets. Assists patients into and out of bed, automobile, or wheelchair to lavatory, and up and down stairs. Assists patients to dress, bathe, and groom self. Massages patient and applies preparations and treatments, such as liniment or alcohol rubs and heat-lamp stimulation. . . . Performs variety of miscellaneous duties as requested, such as obtaining household supplies and running errands . . . .

DOT Code 354.377-014, available at https://occupationalinfo.org/35/354377014.html (last visited Jan. 9, 2019).

records fail to establish Plaintiff did, in fact, recover from the injuries; rather, an X-ray of Plaintiff's lumbar spine taken March 7, 2016, showed "advanced degenerative changes involving the right hip are similar to 8/26/2015." AR at 480. Further, notes pertaining to PT sessions Plaintiff attended following the accident and the surgical ORIF show Plaintiff continued to exhibit decreased ROM of her right knee, shoulder and hip which interfered with her ability to ambulate, ascend and descend stairs, and raise her right arm. In particular, PT notes dated February 1, 2016 show Plaintiff complained of pain in her right lower and upper extremities, difficulty walking, bending and dressing, presented with gait dysfunction, decreased strength and ROM in her right knee, hip and shoulder, and "will require skilled PT intervention to meet [long term goals] for pain free participation in [activities of daily living]." AR at 439. At that time, Plaintiff ambulated with a walker, with her right leg externally rotated. AR at 439-40. PT goals included increasing ROM and strength of right hip and knee, active ROM of the right shoulder, and ascending and descending four steps using a "step-over" pattern. AR at 441. On March 8, 2016, Plaintiff continued to exhibit decreased ROM and strength in her right hip, knee and shoulder, could ambulate without an assistive device, but with right trendelenburg (abnormal gait resulting from strained hip muscle), and Plaintiff's PT goals, including increasing ROM and strength of right hip, knee and shoulder, ascending and descending four steps with stepover pattern, as well as ambulating "household distances without device without increase in pain," and "reach[ing] top of head without increase in pain to improve participation in grooming," remained. AR at 443-45. PT notes from April 27, 2016 were essentially unchanged, with Plaintiff reporting she had been unable to attend regularly scheduled PT because of illness

which also prevented her from performing her home exercise program. AR at 446-49. On June 16, 2016, Plaintiff was discharged from PT for non-compliance after failing to return for further sessions, AR at 450, which Plaintiff attributes to illness. AR at 446. Significantly, nothing in the record suggests that Dr. Ritter was ever even asked to opine as to any limitations posed to Plaintiff's ability to perform work-related activities despite Dr. Ritter's statement shortly following the accident that Plaintiff would not be able to work until February 2016, and the evidence in the record establishes Plaintiff did not progress after the accident as Dr. Ritter predicted.[7] AR at 319. As such, the only medical opinions in the record regarding Plaintiff's ability to perform work-related activities are the opinions of Dr. Jawaida and Dr. Liu, both which predate the accident in which Plaintiff sustained further injury to her already arthritic knees and hip, as well as dislocated her right shoulder, such that the opinions were stale when the ALJ relied on them in rendering the November 7, 2016 decision and fail to account for the deterioration in Plaintiff's physical ailments port-accident. *See* Discussion, *supra*, at 12.

Accordingly, the record establishes the ALJ impermissibly relied on stale medical opinions in arriving at his conclusion that Plaintiff retained the RFC for medium work, including her PRW as a home health aide, warranting a remand. Upon remand, the ALJ should further develop the record by obtaining an updated medical opinion as to Plaintiff's RFC.

---

[7] The court finds it odd that the ALJ does not mention the impact of Plaintiff's shoulder injury on her ability to perform work-related activities, especially given that her inability to ambulate for the requisite amount of time to support medium and light-weight work also appears to be compromised, making it very likely Plaintiff might be limited to, at most, sedentary work, which often requires use of the upper extremities. *See* 20 C.F.R. § 404.1567(a)-(c) (providing requirements for sedentary, light and medium work).

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 8) is GRANTED; Defendant's Motion (Dkt. 12) is DENIED. The case is remanded to the ALJ for a new hearing and decision, consistent with this Decision and Order.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      January 9, 2019
                Buffalo, New York